**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**WORLEY BROWN, LLC**                                                            **PLAINTIFF**

**vs.**                                               **CIVIL ACTION NO. 3:10cv394 HTW-LRA**

**THE MISSISSIPPI DEPARTMENT OF**
**ARCHIVES AND HISTORY**                                          **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before this court are three motions.  The first is a Motion to Dismiss for Lack of

Jurisdiction, for Immunity, and for Other Grounds **[docket no. 4]** filed by defendant The

Mississippi Department of Archives and History.  The other two motions, both filed by

plaintiff Worley Brown, LLC, are: a motion to remand this action to state court **[docket**

**no. 10]** and a motion for leave to amend the complaint **[docket no. 13]**.  Having

considered the written submissions of the parties and having conducted a hearing on

the motions, this court grants defendant's motion to dismiss **[docket no. 4]** and denies

both the plaintiff's motion to remand **[docket no. 10]** and the plaintiff's motion for leave

to amend the complaint **[docket no. 13]**.  The court reasons as follows.

### I.  Background

#### A.  Designation and Sale of the Natchez Pecan Shelling Factory

The Mississippi Department of Archives and History ("MDAH") is an agency of

the State of Mississippi.  *See* Miss. Code Ann. § 39-5-1.[1]  The Board of Trustees of the

---

[1] Section 39-5-1 of the Mississippi Code states:

There shall be for the State of Mississippi a department of archives and history located
in the state capitol in apartments set aside for its use by the governor. The objects and

MDAH ("the Board") is empowered "to determine the site of and to designate Mississippi landmarks . . . to consider the requests for, and issue, the permits [with respect to such landmarks]. . . and to protect and preserve the archaeological, historical and architectural resources of the State of Mississippi."  Miss. Code Ann. § 39-7-7.  Once designated as a Mississippi Landmark, any real property and building may not be "taken, altered, damaged, destroyed, salvaged, restored, renovated or excavated without a permit from the Board," regardless of whether the property is publically or privately owned.  Miss. Code Ann. § 39-7-11.[2]

On December 29, 1995, Jerold D. Krouse conveyed a parcel of land commonly known as the site of the Natchez Pecan Factory Shelling Company to the City by Deed of Gift.  Deed [docket no. 10-1].  On August 9, 2005, the City of Natchez, Adams

---

purposes of the department are the care and custody of official archives, the collecting of materials bearing upon the history of the state and of the territory included therein, from the earliest times, the editing of official records and other historical material, the diffusion of knowledge in reference to the history and resources of this state, the preparation and publication of annual reports, the encouragement of historical work and research and the performance of such other acts and requirements as may be enjoined by law.

[2] Section 39-7-11 of the Mississippi Code states in pertinent part:

(2) . . . sites, objects, buildings, artifacts, implements, structures and locations of historical or architectural significance located in or under the surface of any lands belonging to the State of Mississippi or to any county, city or political subdivision of the state may be declared to be Mississippi landmarks by majority vote of the [MDAH] board [of trustees]. Every Mississippi landmark shall be so designated. . . All such designated sites or items located on public lands within the State of Mississippi may not be taken, altered, damaged, destroyed, salvaged, restored, renovated or excavated without a permit from, the board or in violation of the terms of such permit.

(3) All such sites or items located on private lands within the State of Mississippi that have been designated as Mississippi landmarks as hereinafter provided, may not be taken, altered, damaged, destroyed, salvaged, restored, renovated or excavated without a permit from the [MDAH] board [of trustees] or in violation of the terms of such permit. Such designation shall be reduced to recordable form sufficiently describing the site so that it may be located and shall be recorded in the deed records of the county in which the landmark is located.

County, Mississippi, entered into an Option/Development Agreement for the acquisition and development of said land with Worley Brown, LLC ("Brown, LLC), a Mississippi limited liability company with its principal place of business in Natchez.[3]  Id.;  Complaint at ¶ 1.  All parties agree that at its meeting on January 13, 2006, the Board, pursuant to Mississippi Code § 39-7-11,[4] designated said property as a protected Mississippi Landmark.  Certificate of Mississippi Landmark Designation [docket no. 4-2].  At the time of the designation, the City of Natchez owned the site.

In accordance with the Option/Development Agreement, on May 30, 2006, Edward A. Worley, acting on behalf of Brown, LLC, purchased the property from the City of Natchez. Deed.[5]  Brown, LLC purchased the site from the City with the understanding under the Option/Development Agreement that Brown, LLC would demolish the Natchez Pecan Shelling Factory and build condominiums on the property. Complaint at ¶ 13. Brown, LLC knew its intended activities required a permit from the Board and claims it purchased the land believing that the Board issued such permits in February 2006 and March 2006.  Id.

## B.  The Actions of the Board

---

[3]The court has not been provided with a copy of the Option/Development Agreement and is characterizing the Agreement as described within the deed conveying the land at issue.

[4] *supra*

[5]The record reflects that Edward A. Worley signed the May 2006 deed on behalf of Brown, LLC. Larry L. Brown, Jr. signed the March 2007 Notice of Intent Form [docket no. 4-4] and the March 2007 Debris Removal Permit [docket no. 4-3] on behalf of Brown, LLC. The record, however, does not explicitly identify the owner(s) of Brown, LLC.

**1. Action in Response to the First Notice of Intent for Development of the Site**

At a meeting of the Permit Committee of the Board, on February 9, 2006, Tom Waggener, the Board's Review and Compliance Officer, reported that he had received Notice of Intent Forms dated January 23, 2006, seeking permission to demolish the Natchez Pecan Shelling Factory and construct condominiums at the site. Waggener moved that a permit be issued for the project subject to the conditions that:[6]

1) Final acceptable construction documents [be] prepared and submitted;

2) Evidence of a signed contract for construction of those plans [be] submitted; [and]

3) A site report by qualified geologists and/or engineers, approved by the Department of Archives and History, [be] submitted, attesting to the safety and stability of the site for the planned construction.

Permit Committee Meeting Minutes, February 9, 2006 [docket no. 14-5].  The Committee unanimously approved the motion.

On March 9, 2006, at a Permit Committee meeting, Waggener presented proposed revisions to the conditions approved at the February 9 meeting.  The revised conditions would require:

1) The submission of final construction documents of all exterior elevations and building footprints in substantial conformity with those depicted on the schematic drawings previously submitted to and approved by the Natchez Preservation Commission and the Department of Archives and History.

2) The submission to the Department of Archives and History of a copy of a signed contract for construction.

---

[6] The minutes do not reflect who authored the proposal. Waggener stated only that he had received Notice of Intent forms for the proposed demolition and construction and that he prepared a statement approving the proposal with the mentioned conditions.

4

3) The submission of the final site report to Archives from the firm of Burns, Cooley and Dennis Engineers, attesting to the safety and stability of the site for the planned construction.

4) The City of Natchez to retain legal ownership and possession of all archaeological artifacts removed from the Pecan Factory Site.

Permit Committee Meeting Minutes, March 9, 2006 [docket no. 14-5].  The Committee voted unanimously to amend the requirements for permit issuance as Waggener proposed.  On June 2, 2006, the Board met and ratified the actions of the Permit Committee.

**2.  Action in Response to Unauthorized Demolition on the Site**

In February 2007, the Natchez Pecan Shelling Company Building was demolished.  The Board had not issued a permit for such.  Persuaded that Brown, LLC and the City of Natchez had acted without proper authority, the Attorney General for the State of Mississippi and MDAH asked the Adams County, Mississippi, Chancery Court to issue a temporary restraining order prohibiting Brown, LLC and the City of Natchez from further damaging the site without a permit.  Board Opinion, October 19, 2007 [docket no. 4-1]. The Chancery Court issued a temporary restraining order. Id.

On March 2, 2007, however, the Board, out of concern for public health and safety, issued a limited permit for removal of the debris.  This permit stated:

This Mississippi Landmark Permit applies only to the removal of the debris of the Natchez Pecan Shelling Company Building.  This Permit shall not be construed to pertain to any activity other than the debris removal.  Other activities include, but are not limited to, site preparation, site excavation, and/or new construction.  Such activities shall require a separate application and issuance of a separate Mississippi Landmark Permit prior to commencement.

Mississippi Landmark Permit, March 2, 2007 [docket no. 4-3].  Brown, LLC signed and

5

acknowledged the permit.  Clearly, by this March 2007 permit, Brown, LLC had to

submit an application and obtain Board approval in order to commence any construction

at the site.  Complaint at ¶ 27.

### 3.  Action in Response to the Second Notice of Intent for Development of the Site

On March 6, 2007, a few days later, Brown, LLC filed with MDAH an application

for a construction permit.  Notice of Intent for Construction [docket no. 4-4].  The specific

proposal for a condominium complex submitted to MDAH for approval can be generally

described as follows:

> The proposed "Riverview Condominiums" would be situated between Broadway Street and the bluff line just south of Madison Street in Natchez, Mississippi.  The development would include five condominiums, some of which would be five-stories high including a parking structure located below the first floor.  Plan dimensions for the condominiums would range from about 70 ft by 50 ft to about 150 ft by 50 ft.  A below-ground swimming pool would also be located on the property.  The condominium buildings would be placed as close as 55 ft from the existing edge of the bluff.  The soil on the property consists primarily of fill materials, loess, and the Natchez formation.

Board Opinion, October 19, 2007 [docket no. 4-1].  On April 12, 2007, the Permit

Committee voted to recommend that certain conditions be met prior to issuance of a

permit.  *Id.*

The Board convened a special meeting in September 2007, at which it conducted

a formal hearing on Brown, LLC's permit application.  At the hearing, the Board heard

from the spokesperson for Brown, LLC, as well as from Natchez citizens who opposed

the permit.  The Board also considered expert testimony from the following:  Eddie

Templeton, a geological expert hired by Brown, LLC;  Dr. David Dockery, Chief of the

Surface Geology Division of the Mississippi Office of Geology;  Dr. James May, a

6

registered geologist who formerly had worked with the Corps of Engineers and now teaches at Mississippi State University;[7] and two engineering firms – Gallet & Associates and United Consulting – hired by the citizen opponents.

At the conclusion of the meeting, the Board voted to deny Brown, LLC's March 2007 permit application, evidently voting in reaction to the concerns raised by Dr. Dockery, Gallet & Associates, and United Consulting.  In light of all of the evidence submitted, the Board concluded that "the proposed construction [was] likely to negatively affect the geological stability and integrity of the Natchez Pecan Shelling Factory site."  The Board determined that the potential risk of damage or destruction to "an irreplaceable Mississippi Landmark" was too great.  MDAH Opinion, October 19, 2007 at pp.6-7 [docket no. 4-1].

**C.  Appeal**

On November 19, 2007, Brown appealed MDAH's decision to the Circuit Court of Hinds County, Mississippi, under a petition for Writ of Certiorari.  Petition for Writ of Certiorari, *Worley Brown, LLC v. MDAH*, No. 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CIV (Hinds County Cir. Ct.) [docket no. 4-5].  Certiorari was granted by the Circuit Court on April 9, 2008 [docket no. 4-7].  Brown, LLC requested dismissal of the appeal.  MDAH voiced no objection and, consequently, on March 17, 2009, the Circuit Court entered an agreed order of dismissal in the matter [docket no. 4-8].

**D.  The Present Suit**

---

[7] Neither Dr. May nor Dr. Dockery was paid by either MDAH, Brown, LLC or the citizen opponents for the work.

On June 16, 2010, Brown, LLC filed the instant lawsuit in the Hinds County, Mississippi, Circuit Court seeking declaratory and injunctive relief.  Brown, LLC alleges that it purchased the land in question in order to develop it in reliance on permits previously issued by the Board in February of 2006 and March of 2006.  Complaint at ¶13.  Brown, LLC asserts that those permits have not expired and never have been rescinded nor revoked and that it had met all the requirements for issuance of both permits.  Complaint at ¶¶ 26-43.  The Board, according to Brown, LLC has acted arbitrarily and capriciously and violated Brown, LLC's civil rights by requiring another permit application before Brown, LLC may proceed with construction and by denying its second permit application.  *Id.*

Brown, LLC seeks a judgment declaring: (1) that under the permit issued February 9, 2006, and amended March 9, 2006, the Board is obligated to allow the requested construction;  (2) that the Board has acted arbitrarily and capriciously and has violated Brown, LLC's civil rights guaranteed by Title 42 U.S.C. § 1983[8] by denying Brown, LLC the rightful use of its land;  and (3) that the Board's actions have resulted in damage to the land and loss of economic use without adequate post-deprivation remedy.  Brown, LLC also seeks an injunction prohibiting MDAH from interfering with Brown, LLC's rights with respect to the alleged 2006 permit.  Complaint at ¶ 46.

---

[8]Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

MDAH removed this matter from the state court to this federal forum and filed its motion to dismiss **[docket no. 4]**.  Brown, LLC responded in opposition to the motion to dismiss and filed a motion to remand **[docket no. 10]** and a motion for leave to amend its complaint **[docket no. 13]**.

## II.  Analysis of Law

### A.  Motion to Remand

This motion will be taken up first since it concerns subject matter jurisdiction. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Title 28 U.S.C. § 1441(a).  The district courts have original jurisdiction – federal question jurisdiction – of "all civil actions arising under the Constitution, laws, or treaties of the United States."  Title 28 U.S.C. § 1331.  The existence of federal question jurisdiction is determined by the "well pled complaint rule" which provides that a federal question must appear "on the face of the plaintiff's properly pleaded complaint.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

Brown, LLC alleges in its complaint that the actions of the Board were unconstitutional and violated Title 42 U.S.C. § 1983.  Brown, LLC's request for relief includes, *inter alia*: (1) a declaration by this court that "the Defendant has arbitrarily and capriciously violated [the] civil rights of the Plaintiff by denying it the right to use the land, all in violation of [Title] 42 U.S.C. § 1983" and (2) an injunction "prohibiting the

Defendant from violating the Plaintiff's civil rights."  Complaint at ¶ 46.

Clearly, the matter *sub judice* is umbrellaed by federal subject matter jurisdiction. Brown, LLC relies upon § 1983, a federal enactment for recovery.  So long as a federal enactment is rightfully present as a cause of action, even if purely state law claims are joined in the complaint, federal courts have subject matter jurisdiction over the federal cause of action.  See Title 28 U.S.C. § 1441(c) (allows removal of an "entire case" when it includes at least one claim over which the federal court has jurisdiction).[9]

Brown, LLC contends, however, that the doctrine of collateral estoppel precludes this court from accepting jurisdiction.  Quite simply, Brown, LLC argues here that the issue of whether this court has subject matter jurisdiction over this lawsuit has been adjudicated in a previous suit and that the earlier adjudication obligates this court to reject a holding of federal subject matter jurisdiction.

_____

[9]The version of Title 28 U.S.C. § 1441(c) applicable to cases, such as this one, commenced prior to January 6, 2012, states: "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

The most recent version of § 1441(c), applicable to actions commenced on or after January 6, 2012, provides:

(c) Joinder of Federal law claims and State law claims.
  (1) If a civil action includes--
    (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title [28 U.S.C. § 1331]), and
    (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
    (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

Brown, LLC's factual basis for its arguments is as follows.  On March 25, 2009, Brown, LLC filed suit against MDAH in this court, *Worley Brown, LLC v. The Mississippi Dep't of Archives and History*, Civil Action No. 5:09-cv-42 KS-MTP (S.D. Miss. 2009). MDAH filed a motion to dismiss [docket no. 16-2], invoking its Eleventh Amendment[10] immunity from suit for money damages.  In its response [docket no. 16-3], Brown, LLC conceded that since MDAH had asserted the defense of immunity, this court did not have subject matter jurisdiction.  Further, Brown, LLC stated in its response that it would present to this court a proposed order of dismissal without prejudice pursuant to Rule 41(a)(2).[11]  On August 11, 2009, this court entered an order [docket no.s 10-3, 16-4] granting MDAH's motion to dismiss for lack of subject matter jurisdiction on grounds of Eleventh Amendment immunity and dismissing the matter without prejudice pursuant to Rule 41(a)(2).

Predicating its argument on the above facts, Brown, LLC contends that, under the doctrine of collateral estoppel, this court's 2009 order finding a lack of jurisdiction prevents relitigation of the issue of jurisdiction in the present matter.  Obviously, this interrogatory requires an examination of the doctrine of collateral estoppel.

---

[10] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[11] Rule 41(a)(2) states:

(a) Voluntary Dismissal
. . . .

(2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

To establish collateral estoppel under federal law, Brown, LLC must show: (1) that the issue at stake is identical to the one involved in the prior litigation; (2) that the issue was actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).

Brown cannot establish collateral estoppel in the present case. That MDAH was *able* to invoke immunity in the 2009 suit does not dictate that MDAH *must* invoke immunity in the present case. "The Eleventh Amendment. . . does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (citation omitted). Unless the State raises the matter of immunity, a court can ignore it. *Id.* (citation omitted). "The [United States] Supreme Court has long recognized that a State's sovereign immunity is a personal privilege which it may waive at its pleasure." *AT&T Communs. v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001) (citing *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 675, 144 L. Ed. 2d 605, 119 S. Ct. 2219 (1999)). The decision to waive that immunity is altogether voluntary on the part of the sovereignty. *AT&T Communs.*, 238 F.3d at 643 (citing *Beers v. Arkansas*, 61 U.S. 527, 529, 15 L. Ed. 991 (1858)). Thus, while this court may determine, in accordance with the law, to which entities of the State the immunity defense is available, only the state, or a capable entity of the state, can decide whether to assert or waive immunity.

12

MDAH, then, was free to assert or waive immunity in this case, and it chose to waive immunity.  The prerogative of MDAH to make that choice is well-established in the law.  The law further provides that unless MDAH raises the matter of immunity, that issue is not even before this court.  Once MDAH raised the issue of immunity before this court in the 2009 suit, this court then decided that issue.  MDAH has not raised the issue of immunity before this court in the present matter.  Therefore, the issue of immunity is not before the court in the case at hand.

The second requirement for collateral estoppel – whether the issue before the court has been "actually litigated" – is also not met.  Even if the issues were the same in the 2009 case and the present matter, under the doctrine of collateral estoppel, a voluntary dismissal does not constitute actual litigation.  "[T]he element of finality, essential to application of collateral estoppel, is plainly lacking in a judgment upon a Rule 41(a)(1) dismissal." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip., Inc.*, 434 F.3d 320, 325 (5th Cir. 2005).  A voluntary dismissal without prejudice has no res judicata or collateral estoppel effect since it does not constitute an adjudication or a judgment on the merits. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 9 (5th Cir. 1974). *See also Plumberman, Inc. v. Urban Systems Development Corp.*, 605 F.2d 161, 162 (5th Cir. 1979) (a voluntary dismissal under Rule 41(a) without prejudice can have no res judicata effect).

The doctrine of collateral estoppel does not embrace these facts.  With the doctrine of collateral estoppel rejected, this court is left with the following: Brown, LLC seeks relief here under § 1983, a federal enactment which provides federal question jurisdiction under § 1331.

Subject matter jurisdiction has been confirmed.  This court will now proceed to consider MDAH's motion to dismiss.

## B.  Motion to Dismiss

Defendant MDAH has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion to dismiss allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  A motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, n. 8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences from those allegations in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Plaintiff here, of course, is Brown, LLC.

### 1. Statute of Limitations

#### a.  Standard

MDAH asserts that the claims of Brown, LLC are barred by the statute of limitations.  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

As earlier stated, Brown, LLC's claims travel under Title 42 U.S.C. § 1983. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998).  For a § 1983 action, this court

14

looks to the forum state's personal-injury limitations period.  *Id.*  The applicable statute

of limitations is Mississippi's general three-year statute of limitations found in Mississippi

Code § 15-1-49.[12]  *Hubbard v. Miss. Conf. of the United Methodist Church*, 138 F. Supp.

2d 780, 781 (S.D. Miss. 2001).  Federal law determines when a cause of action

accrues[13] for purposes of § 1983 claims.  *Osborne*, 133 F.3d at 319.  "Under federal

law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that

he has suffered an injury or has sufficient information to know that he has been

injured.'" *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v.*

*Clements*, 832 F.2d 332, 335 (5th Cir.1987)).

### b.  Analysis

When, then, did Brown, LLC have requisite knowledge of this claim?  This court

finds that Brown, LLC had sufficient information to know of the injuries it claims when it

signed the permit issued by the Board on March 2, 2007.  That permit specifically stated

that Brown, LLC was only authorized to remove debris from the protected site and,

further, explicitly stated that a separate construction permit would be required prior to

the commencement of construction.  Shortly after the Board stated that a construction

permit would be required, in March 2007, Brown, LLC demonstrated its understanding

that the alleged 2006 permit would not be honored when it submitted an application

---

[12] Section 15-1-49(1) of the Mississippi Code provides that "[a]ll actions for which no
other period of limitation is prescribed shall be commenced within three (3) years next after the
cause of such action accrued, and not after."

[13]"A cause of action 'accrues' when it comes into existence as an enforceable claim, that
is, when the right to sue becomes vested." *Hyde Constr. Co. v. Koehring Co.*, 321 F. Supp.
1193, 1207 (S. D. Miss. 1969).

requesting a permit to construct condominiums.

Brown, LLC's complaint shows as much, too.  The complaint explicitly asserts that MDAH imposed an allegedly "arbitrary and capricious" requirement that Brown, LLC "submit" a "separate" permit application in March 2007 that violated Brown, LLC's "civil rights."  Complaint at ¶ 27.

Brown, LLC, then, was aware in March 2007 that MDAH did not recognize the existence/authority of any 2006 permit; thus, any cause of action regarding rights with respect to that permit accrued in March 2007.  Brown, LLC filed this suit in June 2010, more than three years later.  Accordingly, the claims of Brown, LLC that MDAH violated federal and state law when MDAH refused to recognize the existence of a 2006 permit are seemingly barred by the three-year statute of limitations.

### c.  Savings Statute

In response to this argument, Brown, LLC contends that the statute of limitations was tolled during the pendency of its 2009 federal court suit between these parties[14] and for one year after that suit.  Brown, LLC champions Mississippi Code § 15-1-69.[15] Federal courts apply a state's tolling provision when the court applies the state's statute

---

[14] Filing a complaint tolls the running of the statute of limitations, as long as process is timely served. *Owens v. Mai*, 891 So. 2d 220, 223 (Miss. 2005); Erby v. Cox, 654 So. 2d 503, 505 (Miss. 1995).

[15] Section 15-1-69 of the Mississippi Code states:

If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the judgment therein, and his executor or administrator may, in case of the plaintiff's death, commence such new action, within the said one year.

of limitations.  *See Board of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) ("Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983. . . .  In [Title] 42 U. S. C. § 1988, Congress quite clearly instructs [federal courts] to refer to state statutes when federal law provides no rule of decision for actions brought under § 1983") (internal quotation marks omitted); *Griffen v. Big Spring Independent School Dist.*, 706 F.2d 645, 653 (5th Cir. 1983) (applied state tolling statute in a § 1983 action).

In Brown, LLC's 2009 federal suit, the complaint, brought pursuant to Title 42 U.S.C. § 1983, sought monetary damages based on the allegation that MDAH's 2007 denial of its construction permit violated Brown, LLC's due process rights and constituted a takings without compensation under federal law.  Complaint, March 25, 2009 [docket no. 18-1].  MDAH filed a motion to dismiss for lack of subject matter jurisdiction [docket no. 16-2], and Brown, LLC responded [docket no. 16-3], acknowledging the court's lack of jurisdiction and asking the court to dismiss the suit. On August 11, 2009, this court granted Brown, LLC a voluntary dismissal without prejudice for lack of subject matter jurisdiction [docket no. 10-3].

Mississippi Code § 15-1-69 provides in pertinent part "[i]f in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated . . . for any matter of form . . . the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit . . ."  Brown, LLC must meet four requirements in order for the savings statute to apply: (1) the March 2009 action must have been timely filed; (2) the action earlier must have been dismissed for a matter of form; (3) the action

17

earlier must have been the "same cause" as the present action; and (4) the present action must have been filed with one year of the dismissal of the 2009 action.  Further, "good faith" in filing the first suit is an element the court should consider in weighing whether the plaintiff has the right to invoke the savings statute.  *Marshall*, 7 So. 3d at 216.

Without question, the March 2009 action was filed timely, within the three-year statute of limitations.  Likewise, it is undisputed that the present action, filed on June 16, 2010, was filed within one year of August 11, 2009, the date on which this court dismissed Brown, LLC's 2009 action.  The first and fourth requirements, then, are met.

This court also finds that the second element is met – that the 2009 action was dismissed as a matter of form.  While voluntary dismissals are not generally considered dismissals as a matter of form under the savings statute, § 15-1-69, dismissals based on lack of subject matter jurisdiction, even when voluntary, are considered dismissals as a matter of form.  *Marshall v. Kansas City Southern Railways Co.*, 7 So. 3d 210, 215 (Miss 2009) (citing *Crawford v. Morris Transp., Inc.*, 990 So. 2d 162, 174 (Miss. 2008)).  In *Marshall*, the court stated: "the order of dismissal and entry of final judgment was a matter of form under Section 15-1-69, as the [voluntary] dismissal was [sought] based on the district court's lack of subject matter jurisdiction." *Id.* This court's voluntary dismissal of Brown, LLC's 2009 suit without prejudice for lack of subject matter jurisdiction qualifies, then, under the savings statute as a dismissal as a matter of form.

This court also finds that Brown, LLC filed its 2009 suit in good faith.  Brown, LLC properly invoked the federal question jurisdiction of this court in its 2009 suit since its primary claim was that it had suffered constitutional violations actionable under § 1983.

18

2009 Complaint at ¶ 3.  MDAH afterwards asserted an affirmative defense which resulted in a necessary finding that this court lacked jurisdiction.  Thus, the good faith element is met.

The remaining inquiry as to the applicability of the savings statute is whether the 2009 suit and the present suit are the same cause.[16]  MDAH contends that in order for two actions to be the same cause, they must contain the same claims and request the same type of relief. MDAH asserts that the 2009 action and the present suit are not the same cause because the 2009 complaint asserted only federal law claims and exclusively sought monetary damages while the present suit contains federal and state law claims and seeks only declaratory and injunctive relief.

This court must begin by addressing whether Brown, LLC has raised state law claims in the present action.  MDAH contends that Brown, LLC's complaint asserts that the Board denied Brown, LLC's permit in violation of state law and violated Brown, LLC's due process rights under state law.  MDAH Memorandum in Support of Motion to Dismiss at p.29.  This court finds no such claims in Brown, LLC's complaint and concludes that Brown, LLC did not raise state claims.

Next, this court determines whether the difference between the relief requested in the 2009 suit and the present suit prevents the application of the savings statute as Brown, LLC asserts. MDAH relies upon three cases in support of its assertion.  The first

---

[16] This court notes that the savings statute applies when a federal court dismisses a case for lack of jurisdiction, as in this case, and then the plaintiff files the same cause in state court. *Lowry v. International Brotherhood of Boilermakers*, etc., 220 F.2d 546, 547 (5th Cir. 1955) (applying the Mississippi savings statute).

case is *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472 (W.D.N.C. 2003).  Under the North Carolina savings provision,[17] new claims are the same as the original claims if all claims in the subsequent suit are explicitly the same or are a derivative of or dependent upon a claim in the prior suit.  *Id.* at 478-80.  Claims are different such that the savings statute does not apply if "each of the new claims [is] independent, with its own set of required elements."  *Id.* at 478.  Regardless of whether the new claims are based on the same facts as the original claims, claims are different if the original claims cannot be considered to have put the defendants on notice that they would need to defend against the new claims.  *Id.*

The second case MDAH cites is *Children's Hospital v. Ohio Dept. of Public Welfare*, 433 N.E.2d 187, 189-190 (Ohio 1982).  The Ohio Supreme Court found the savings statute inapplicable where the requested relief differed and the parties differed.[18]  *Id.* at 189-90.  The new action and original action named completely different defendants, and one action sought declaratory and injunctive relief while the other suit sought monetary damages.  *Id.* at 189.

---

[17] Under North Carolina Rule 41, "if an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal. . . ." N.C. Gen. Stat. § 1A-1, Rule 41.

[18] The savings statute discussed, Ohio's Revised Code § 2305.19, states in part:

(A) In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

Brown, LLC asserted in both complaints, the complaint filed in 2009, as well as that filed in the present action, that MDAH committed a taking without fair compensation in violation of the Fifth Amendment[19] and violated Brown, LLC's due process rights in violation of the Fourteenth Amendment[20] and that these claims are actionable under § 1983.[21]  This court finds no additional claims in either complaint.  The statutes analyzed in *Strawbridge* and *Children's Hospital* are somewhat similar to Mississippi's savings statute.  Neither of those cases, however, persuades this court the savings statute does not apply to the present suit.

The claims in the two suits before this court for consideration are the same.  The elements of the causes in both actions are the same.  While the factual presentation of the claims differs between complaints, the actual claims are the same, and it cannot be said that the allegations and claims presented in the first suit failed to put MDAH on notice of the same allegations and claims, though differently worded, in the present suit. The factors present in *Strawbridge* that made the claims different are simply not present here.

Similarly, *Children's Hospital* does not guide this court in its determination.  In that case, the parties *and* requested form of relief differed between the actions.  The

_____

[19]The Fifth Amendment of the United States Constitution provides in pertinent part: "No person shall. . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

[20]The Fourteenth Amendment, § 1, of the United States Constitution, states in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[21]See footnote 8.

difference in the form of relief requested is present in this case. The difference in parties, however, is not present in this case. *Children's Hospital* does not state that a difference in form of relief alone is sufficient to distinguish causes of action for the purpose of the savings statute. *Children's Hospital* does not align with the facts before the court and does not answer the question of whether causes are different under the savings statute when the only difference is the type of relief requested.

In MDAH's third case, *Hawkins v. Scottish Union & National Ins. Co.*, 69 So. 710, 711-712 (Miss. 1915), the Mississippi Supreme Court applied the savings statute when the relief sought – monetary damages – was the same in both cases. MDAH directs the court to the Court's determinative statement that "[a]ll that was sought to be recovered of appellee in the former suit was the amount due by it under its policy, and that is all that is sought to be recovered here." *Id.* at 711. This statement informs the court that the savings statute can apply where the relief sought is of the same type in both actions but does not inform the court with respect to the question before it – whether requesting different types of relief bars the application of the savings statute.

The Mississippi Supreme Court somewhat recently reiterated that *Hawkins* provides the standard by which that court continues to measure application of the savings statute. *Arceo v. Tolliver,* 19 So. 3d 67, 74 (Miss. 2009). *Hawkins* indicates that the guidelines for determining whether the savings statute applies are not as stringent as MDAH suggests. The *Hawkins* decision instructs that "[the savings statute] is a highly remedial statute and ought to be liberally construed for the accomplishment of the purpose for which it was designed, namely, to save one who has brought his suit within the time limited by law from loss of his right of action. . ." *See also Herrington v.*

22

*Promise Specialty Hosp.*, 665 F. Supp. 2d 708, 710 (S.D. Miss. 2009).  Exemplary of

the liberal construction directed therein, the *Hawkins* decision holds, and MDAH

concedes, that the savings statute applies when the original suit contained multiple

claims and the second contains only one of the previously asserted claims.  MDAH

Rebuttal, p.7, n.8.  Finding no case law directly on the issue, this court simply reasons

from *Hawkins* as well as from analogous law on whether two causes are the "same

cause," that similar liberality would be applied when considering the relief requested in

the original and second actions.[22]

In determining whether two actions are the "same cause," this court notes that

the definition of a "cause of action" is "a group of operative facts that entitles a petitioner

to seek remedy in court."  *LaCroix v. Marshall County*, 409 Fed. Appx. 794, 835 (5th Cir.

2011) (citing *Anderson v. LaVere*, 895 So.2d 828, 832 (Miss. 2004)). Mississippi law

indicates that differences in the form of relief requested do not restrict a court from

deeming two actions the "same cause."  *See Chandler-Sampson Ins., Inc.*, 891 So. 2d

224, 234-36 (Miss. 2005) (quoting *Nevada v. United States*, 463 U.S. 110, 131, n.12,

103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983)) ("causes of actions are the same if they arise

from the same transaction") *and* (citing *Aetna Casualty & Sur. Co. v. Berry*, 669 So. 2d

56, 69 (Miss. 1996) (two cases in which one seeks monetary damages and one does

---

[22]In the absence of a final decision by the state supreme court addressing the issue at hand, a federal court must determine, in its best judgment, how the state's highest court would resolve the issue if presented with it. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). When the state supreme court has not addressed the issue at hand, the federal court must make an "Erie guess." *Id.* at 192.  This court's answer to the question of how Mississippi law distinguishes between causes of action must be based on Mississippi state law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938).

not are the same cause if: (1) "the two claims stem from a common nucleus of operative fact" and (2) the plaintiff could have sought the relief requested in the second suit in the first suit)).

Further illustrative of the indication that requesting different types of relief does not bar application of the savings statute is *Lowry v. International Brotherhood of Boilermakers, etc.*, 220 F.2d 546, 547 (5th Cir. 1955).  In *Lowry*, the plaintiff sought monetary damages and injunctive relief in the first suit and only monetary damages in the second suit.  While the court did not comment on the effect of the different forms of relief requested on the applicability of the Mississippi savings statute, the court gave reason to believe that the differences do not bar the application of the statute.  The court noted, among other things, the differences in the relief requested.  *Id.*  The court nevertheless concluded that the savings statute applied.  *Id.* at 548.  The Fifth Circuit reversed the trial court not on the remedy question, but on another ground: that the trial court's determination that the original suit was not dismissed as a matter of form was in error.  The Fifth Circuit then remanded the case.  *Id.* at 548.

Having considered the arguments and the law, this court concludes that Brown, LLC's 2009 suit and the present suit are the same cause under § 15-1-69 and that the statute of limitations was tolled until Brown, LLC filed the present action.  Therefore, the filing of the present suit was timely.  As such, this court will proceed to determine the validity of MDAH's remaining arguments urging dismissal.

### 2.  Takings Claim

The Fifth Amendment of the United States Constitution[23] prohibits the taking of private property for public use without just compensation. Brown, LLC asserts that "the Defendant's actions have resulted in damage to the land of the Plaintiff, and loss of economic use of said land, all without adequate post-deprivation remedy." Complaint, Prayer for Relief, ¶ d.  The United States Supreme Court has recognized that "government regulation may be so restrictive that it denies a property owner all reasonable beneficial use of [the] property, and thus has the same effect as an appropriation of the property for public use, which concededly would be a taking under the Fifth Amendment."  *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,  473 U.S. 172, 185, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).

A plaintiff pleads a claim of *per se* taking with respect to regulatory action when the plaintiff alleges facts showing that the regulation either (1) results in a permanent physical invasion of property or (2) deprives a property owner of *"all* economically beneficial use" of its land.  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005) (citation omitted) (emphasis in original). Brown, LLC pleads no facts that suggest either of these two categories apply, so it has not stated a claim of *per se* taking. Outside these two categories, regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978).

The first consideration is whether the claim of regulatory taking is ripe.  "[United States Supreme Court] cases uniformly reflect an insistence on knowing the nature and

---

[23]See footnote 19.

extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351, 106 S. Ct. 2561, 91 L. Ed. 2d 285  (1986).  Unless the court is afforded knowledge of the "nature and extent of permitted development," the court must conclude that a claim of regulatory takings is not ripe.  *See, e.g., Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 130-31, 57 L.Ed.2d 631, 98 S. Ct. 2646 (1978) ("In deciding whether a particular governmental action has effected a taking, this Court focuses. . . both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole.").  The Fifth Circuit has made clear that a regulatory takings claim that is not ripe is beyond the subject matter jurisdiction of the federal courts.  *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006) ("Ripeness is a question of law that implicates this court's subject matter jurisdiction") (citation omitted).

The United States Supreme Court has adopted a two-pronged test for ripeness under the Fifth Amendment's Takings Clause, explaining that regulatory takings claims are not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner; and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides.  *Urban Developers LLC*, 468 F.3d at 292-293 (citing *Williamson County*, 473 U.S. at 186-187).  For a regulatory takings claim to be ripe, the governmental body must have made a "final decision" (*i.e.,* a complete decision) regarding what can and cannot be built on the property.  *Williamson County,* 473 U.S. at 186-187;  *Urban Developers*, 468 F.3d at 292.  "Since the evaluation of a regulatory takings claim involves a factual

26

inquiry into the particular circumstances of each case, [. . .] the rejection of a single development plan is not sufficient to demonstrate that a regulatory takings claim is ripe for decision."  *Sudarsky v. City of New York*, 779 F.Supp. 287, 300-301 (S.D.N.Y. 1991) (citing *MacDonald, Sommer & Frates*, 477 U.S. at 349, 351-53;  *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 136-37, 57 L.Ed.2d 631, 98 S. Ct. 2646 (1978)) (internal citation omitted).  "A final and authoritative determination of the type and intensity of development legally permitted on the subject property" must exist before a regulatory takings claim is ripe.  *MacDonald, Sommer & Frates*, 477 U.S. at 348.

It was the United States Supreme Court's decision in *Penn Central*, which established that a factually-specific denial of a single application does not create a ripe takings claim.  As the Fifth Circuit explained,

> in *Penn Central* the [United States Supreme] Court declined to hold that New York City's Landmarks Preservation Law effected a taking as applied to Grand Central Terminal, reasoning that although the City had disapproved a plan for a 50-story building above the terminal, the property owners had not sought approval for an alternative plan, and it was therefore uncertain whether the City would disapprove of all economically beneficial uses of the land. This means that even if a plan is initially disapproved by the government, property owners must then seek variances or waivers, when potentially available, before a court will hear their takings claims.

*Urban Developers LLC.*, 468 F.3d at  293 (citations omitted).  As with Brown, LLC, the *Penn Central* plaintiff filed suit after its first, large-scale application was denied.  In finding the claim not to be ripe, the Supreme Court noted that "[s]ince appellants have not sought approval for the construction of a smaller structure, we do not know that appellants will be denied any use of any portion of the airspace above the Terminal." *Penn Cent. Transp. Co.*, 438 U.S. at 137.  *See also MacDonald, Sommer & Frates*, 477

27

U.S. at 353 n.9 (1986) (in takings analysis, "[r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews"), and *U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127, 106 S. Ct. 455, 88 L. Ed. 2d 419 (1985) ("even if the permit is denied, there may be other viable uses available to the owner.  Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred.").

MDAH's decision to deny Brown, LLC's application to build this five-story structure with underground parking and an in-ground pool 55 feet from the edge of the bluff is not a blanket denial of any development on the Pecan Factory historical site, nor is it a blanket denial of even all condominium proposals.  MDAH's decision, instead, is based on the specific size and geological risk of the proposed massive condominium complex.  MDAH's fact-specific rationale, a rationale that does not foreclose all development, does not create a ripe takings claims.[24]  As the Supreme Court explained in *MacDonald, Sommer & Frates*,

> The plaintiff's claim here must fail for the same reasons the claims in *Agins* [*v. City of Tiburon*, 24 Cal. 3d 266, 274-277, 598 P. 2d 25, 29-31 (1979), *aff'd*, 447 U.S. 255 (1980)] failed. Here plaintiff applied for approval of a particular and relatively intensive residential development and the application was denied. The denial of that particular plan cannot be equated with a refusal to permit any development, and plaintiff concedes that the property is zoned for residential purposes in the County general plan and zoning ordinance. Land use planning is not an all-or-nothing proposition. A

---

[24] Brown, LLC's contention that it contractually obligated itself when purchasing the property to build only the specific condominium project proposed in its 2007 permit application is irrelevant to a takings claim.  Takings analysis focuses on whether the government has taken away all economically viable uses for the land and such analysis is not altered by Brown, LLC's voluntary decision bargain away by contract other economically viable uses.

> governmental entity is not required to permit a landowner to develop property
> to [the] full extent he might desire or be charged with an unconstitutional
> taking of the property. Here, as in *Agins*, the refusal of the defendants to
> permit the intensive development desired by the landowner does not
> preclude less intensive, but still valuable development. Accordingly, the
> complaint fails to state a cause of action.

477 U.S. at 347.  *See also Penn Cent.*, 438 U.S. at 130 ("[plaintiffs] may [not] establish

a 'taking' simply by showing that they have been denied the ability to exploit a property

interest that they heretofore had believed was available for development").

Furthermore, and separate from the finality requirement articulated in *Penn*

*Central*, Brown, LLC's takings claim is not ripe because of its dismissal of its state court

appeal.  The Fifth Circuit bluntly stated, "whenever the property owner has ignored or

abandoned some relevant form of review or relief, such that the takings decision cannot

be said to be final, the takings claim should be dismissed as unripe."  *Urban Developers*

*LLC*, 468 F.3d at 293-94 (dismissing claim as unripe when plaintiff had not "availed

itself of the appeal process set forth in the City of Jackson Municipal Code, which

provides any person affected by an order issued by a housing official with an appeal to

the Circuit Court of the First Judicial District of Hinds County").  Brown, LLC, in fact, did

appeal MDAH's decision to the Hinds County Circuit Court;  the circuit court accepted

jurisdiction; and then Brown asked the circuit court to dismiss his appeal.  The Fifth

Circuit has held that "whenever the property owner has ignored or abandoned some

relevant form of review or relief, such that the takings decision cannot be said to be

final, the takings claim should be dismissed as unripe." *Id.* at 293.  *See also Hidden*

*Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041-1042 (5th Cir. 1998) (finding takings

claim unripe and dismissing for lack of jurisdiction due to "[plaintiff's] failure to follow

through with any formal process of appeal.").

This court has no evidence before it indicating that the Board has reached a final decision as to the type and intensity of development that will be legally permitted on the former site of the Natchez Pecan Shelling Factory. Further, Brown has failed to exhaust its opportunities to seek relief. For both these reasons, Brown's taking claim is not ripe; consequently, this court cannot consider it.

### 3. Procedural and Substantive Due Process Claims

#### a. Procedural Due Process

Brown, LLC's allegation that the denial of its 2007 permit application violated the procedural and substantive due process guarantees of the Fourteenth Amendment fails as a matter of law.  With respect to procedural due process, while as a general rule an aggrieved person need not exhaust state remedies before filing suit in federal court to vindicate a state deprivation of constitutional rights, an exception to this rule applies when the alleged constitutional deprivation is the denial of procedural due process. *Rathjen v. Litchfield*, 878 F.2d 836, 839-40 (5th Cir.1989) ("[N]o denial of procedural due process occurs where a person has failed to utilize the state procedures available to him."); *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir.1987) ("An employee cannot ignore the process duly extended to him and later complain that he was not accorded due process.").  Brown, LLC dismissed its appeal to the circuit court of MDAH's 2007 permit decision, thereby foreclosing its procedural due process claim.

#### b. Substantive Due Process

While substantive due process and takings claims may be implicated

simultaneously, the Fifth Circuit has cautioned that "substantive due process is not the appropriate avenue of relief for most landowner complaints, and that, with rare exceptions, takings clause jurisprudence cannot be circumvented by artful pleading of substantive due process claims." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (citing *Simi Inv. Co. v. Harris County*, 256 F.3d 323 (5th Cir. 2001) (per curiam)) (internal quotation marks omitted).  The reason is that "a specific constitutional protection [such as the Fifth Amendment] ought generally to control over claims made under the rubric of substantive due process."  *Severance*, 566 F.3d at 501-02.  "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Simi*, 236 F.3d at 248 (citing *Albright v. Oliver*, 510 U.S. 266, 273, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994)).  A substantive due process claim can be recognized alongside a takings claim when takings analysis does not exhaust a plaintiff's constitutional claims.  *Simi*, 236 F.3d at 248.  A general allegation that a state entity has "arbitrarily and capriciously" interfered with a property right, as put forth in this case, does not, in itself, state a substantive due process claim in addition to a takings claim.

Even, however, if Brown, LLC's substantive due process allegation is regarded as distinct from its takings claim, it clearly fails.  The Due Process Clause does not authorize federal courts to sit as appellate courts to review the correctness of a state agency's decision.  The Fifth Circuit, in *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996), explained that wrongly interpreting or administering

31

state law does not create a federal constitutional claim under substantive due process. A legally or factually incorrect decision, or even an act of negligence, is insufficient for a substantive due process claim. *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) ("Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").  In rejecting attempts to expand the reach of the substantive due process doctrine, the Fifth Circuit has cautioned that "[t]he Supreme Court's discussions of abusive executive action have repeatedly emphasized that 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  *McClendon*, 305 F.3d at 326 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998)).  Simply arbitrary conduct, standing alone, is insufficient;  the conduct must be sufficiently arbitrary as to "shock the conscience."  *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (rejecting substantive due process claim when acts were arbitrary but not so arbitrary so as to "shock the conscience.").  To properly state a substantive due process claim, the "cognizable level of executive abuse of power is that which shocks the conscience, violates the decencies of civilized conduct or interferes with rights implicit in the concept of ordered liberty."  *Brown v. NationsBank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999) (internal quotation marks omitted).

Brown, LLC contends that (a) MDAH's denial of its 2007 permit application was "contrary to the evidence" and (b) that MDAH incorrectly decided that there was no 2006 permit.   These contentions, even if true, do not evince the "most egregious of official conduct" or that which "shocks the conscience" or "violates the decencies of

civilized conduct."  The allegations in the complaint are nothing more than routine[25] allegations regarding the correctness of an agency decision.  Brown, LLC has failed to state a substantive due process claim. *See FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) ("the due process clause does not require a state to implement its own law correctly, nor does the Constitution insist that a local government be right.")

## C.  Motion to Amend

Brown, LLC seeks to amend its complaint under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure which states that, "a party may amend its pleading once as a matter of course. . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." On July 27, 2010, MDAH filed its motion to dismiss and served Brown, LLC with the motion.  Brown, LLC timely filed its motion to amend on August 12, 2010.[26]

MDAH responds, *inter alia*, that this court should deny Brown, LLC's motion to amend because all of the claims asserted therein are subject to dismissal and, accordingly, are futile.  This court is empowered to deny a motion to amend complaint if amendment would be futile.  *Stripling v. Jordan Production Co., Inc.*, 234 F.3d 863, 873-

---

[25] By use of the word "routine," this court certainly is not hardened to the gravity of this matter, especially as to plaintiff.  The court here is simply pointing to the lack here of extraordinary circumstances.

[26]This court finds no indication in the record that MDAH has filed an answer. See Rule 12(b) ("A motion asserting any of [the 12(b)] defenses must be made before pleading if a responsive pleading is allowed.") Consequently, this court calculates the time in which amendment is allowed under Rule 15(a)(1)(B) from the date MDAH filed its motion to dismiss.

73 (5th Cir. 2000) (citations omitted).  An amendment is futile if the "amended complaint would fail to state a claim upon which relief could be granted."  *Id*. at 873.  Where a proposed amended complaint ". . . is subject to dismissal, leave to amend need not be given."  *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980); *see also DeLoach v. Woodley*, 405 F.2d 496, 496-97 (5th Cir. 1969) (finding court need not allow amendment when complaint fails to cure original, fatal defects).  To determine whether a proposed claim is futile, the Court applies ". . . the same standard of legal sufficiency that applies under Rule 12(b)(6)."  *Stripling*, 234 F.3d at 873.

Brown, LLC's proposed amended complaint recites the same factual allegations and contains the same legal contentions as its original complaint.  The only difference is that the amended complaint adds as defendants several of the MDAH's Board of Trustees in their individual capacities.  Brown, LLC sought leave to add these defendants after MDAH's motion to dismiss correctly noted that Brown, LLC's claims under Title 42 U.S.C. § 1983 cannot be asserted directly against MDAH because MDAH is not a "person" for the purposes of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 61-66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  While the amended complaint would address one of the arguments advanced by MDAH in support of its motion to dismiss, the amended complaint would continue to suffer from the remaining fatal legal flaws appearing in the original complaint.  Thus, amendment would be futile.

### Conclusion

For the reasons set forth above, MDAH's motion to dismiss **[docket no. 4]** is granted and Brown, LLC's motion to amend **[docket no. 13]** and motion to remand

34

**[docket no. 10]** are denied.  This cause is dismissed without prejudice.

      SO ORDERED, this the 24th day of April, 2012.


                s/ HENRY T. WINGATE
                UNITED STATES DISTRICT JUDGE


Civil Action No. 3:10-cv-394 HTW-LRA
Order Denying Motion to Remand
Order Granting Motion to Dismiss
Order Denying Motion to Amend